# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MANUS A. EDWARDS, ) | |
| ) | Case No.: 1:10-cv-2986 |
| ) | |
| Plaintiff, ) | Judge Robert M. Dow, Jr. |
| ) | |
| v. ) | |
| ) | |
| LAKE TERRACE CONDOMINIUM ) | |
| ASSOCIATION, BOARD OF DIRECTORS, ) | |
| ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This is an action for discrimination on the basis of race and age under § 3604 of the Fair Housing Act ("FHA"). 42 U.S.C. § 3604. Before the Court is Defendant's motion to dismiss Count IV of Plaintiff's operative complaint (which alleges discrimination on the basis of race and age) pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendant's motion to dismiss [32] is granted.

## I.  Background[1]

*Pro se* Plaintiff Manus Edwards[2] lives at the Lake Terrace Apartment complex, located at

---

[1] For purposes of Defendant's motion, the Court assumes as true all well-pleaded allegations set forth in the complaint. See, *e.g.*, *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). Unless otherwise specified, the source of all facts in this section is Plaintiff's operative complaint [25]. The following factual summary and analysis represents an effort by the Court to piece together a coherent reading of Plaintiff's rather confusing complaint and brief.

[2] In the complaint, Plaintiff identifies himself as "the President and CEO of the Lake Terrace Tenant's Association, an Illinois corporation engaged in the exercising tenant's rights and labor rights in residential housing and commercial structures." ¶ 2. In his response, Plaintiff asserts that he represents both his own interests and the interests of the Tenant's Association. To be clear, Plaintiff represents only himself in this lawsuit. As an initial matter, the Tenant's Association is not clearly identified as a plaintiff in the complaint. Moreover, it is well-established law that *pro se* litigants (such as Plaintiff) cannot represent corporations. *Nocula v. Tooling Systems International Corp.*, 520 F.3d 719, 725 (7th Cir. 2008)

7337 S. South Shore Drive, in Chicago. ¶ 1. Plaintiff is African American and "over 40 years old." (Pl. Resp. [33] at 2). According to Plaintiff, his apartment complex contains 356 units and 280 parking stalls. ¶ 6. Residents of the building include both renters and individuals who live in condominiums that they own themselves. ¶ 7. The complaint alleges that 99% of the residents of the building are African American. ¶ 6. While 75% of the condo owners are Caucasian, most of them rent their condos to African American tenants. ¶ 6. The remaining 25% of condo owners are African Americans who reside in the building. *Id*.

The building has a parking facility on the premises. ¶ 9. When Plaintiff moved in, the complex had a parking system that was part self-parking, and part valet parking. *Id*. This system had a "35 year history." *Id*. On April 15, 2010, Lake Terrace[3] informed its residents that it would no longer provide valet parking and that residents would have to park their cars themselves. *Id*.; see also (Pl. Resp. at 4). The change in policy was the result of a vote by the condominium association board of directors. *Id*.

Plaintiff and some other tenants attempted to air their grievances with Lake Terrace at an association meeting on May 3, 2010. ¶ 11. "[S]ome tenants, including owners and renters, were locked out of that meeting without having any input of these present matters." *Id*.

## II.  Legal Standard for Rule 12(b)(6) Motions to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first

---

("corporations cannot appear pro se, and one pro se litigant cannot represent another") (citations omitted). If the Tenant's Association wishes to be added as a Plaintiff to this action, it must retain counsel to represent it. *Id.*

[3] For the reasons explained below (*infra* pg. 3-4), the Court uses the shorthand "Lake Terrace" to refer to the Lake Terrace Condominium Association, not the "Lake Terrace Condominium Association, Board of Directors," which is the named Defendant in this action.

must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555, 569 n.14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 562. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005). The trial court must "give liberal construction to a *pro se* plaintiff's pleadings," *Caruth v. Pinkney*, 683 F.2d 1044, 1050 (7th Cir. 1982), which the Court endeavored to do here.

### III. Analysis

As an initial matter, Defendant argues that Plaintiff's complaint is deficient because it names the "Lake Terrace Condominium Association, Board of Directors" as the Defendant. (Def. Mem. [32] at 4-5). Under Illinois law, a corporation's board of directors is not a legal entity separate and distinct from the corporation itself, and thus is not amenable to suit. See, *e.g. Willmschen v. Trinity Lakes Improvement Ass'n*, 840 N.E.2d 1275, 1280 (Ill. App. Ct. 2nd Dist. 2005) (dismissing claim alleged against homeowners' association board of directors). The Court agrees that this is an independent ground for dismissal of Plaintiff's complaint. However, for purposes of providing a full analysis of the claims asserted in Plaintiff's complaint, the Court

will proceed under the assumption that Plaintiff intended to sue the Lake Terrace Condominium Association and not its governing board of directors.

Plaintiff's complaint does not clearly identify which specific provisions of the FHA he believes Defendant violated. The complaint focuses the Court on "42 U.S.C. section 3604 and section 3604(3)(B)" ¶ 25. In his response ([33] at 6-9), Plaintiff clarifies that he alleges that Defendant violated Sections 3604(a) and 3604(b) of the statute. Further, Section C of Plaintiff's response is based on a purported violation of Section 3604(f)(3)(B).

"The Fair Housing Act is concerned with both the furtherance of equal housing opportunity and the elimination of segregated housing." *South-Suburban Housing Center v. Greater South Suburban Bd. Of Realtors*, 935 F.2d 868, 882 (7th Cir. 1991) (citing *Southend Neighborhood Improvement Association v. County of St. Clair,* 743 F.2d 1207, 1209-10 (7th Cir. 1984)). Section 3604(a) makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." Section 3604(b) makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." Section 3604(f) makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap * * *." Section 3604(f)(3)(B)—the statutory language on which Plaintiff bases his third FHA theory—is not an operative prohibition of discrimination; rather, that subsection defines discrimination for the purpose of subsection (f). See § 3604(f)(3) ("For purposes of this subsection, discrimination includes—[* * *] (B) a refusal to make reasonable accommodations in rules, policies, practices,

4

or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."

Plaintiff's complaint fails to state a claim for violation of any of these provisions of the FHA both because Plaintiff has failed to allege that he suffered an injury within the meaning of the statute and because Plaintiff has failed to adequately allege that Defendant discriminated against him. Furthermore, to the extent Plaintiff intended to allege that he was discriminated against on the basis of a handicap, Plaintiff has failed to adequately allege that he has a handicap.

### A. Plaintiff Does Not Allege Injury Under Section 3604(a) of the FHA

In *Bloch v. Frischholz*, 587 F.3d 771, 775-777 (7th Cir. 2009), the Seventh Circuit held that the only claim a renter or owner can bring under § 3604(a) for "post-acquisition discrimination" (that is, "discrimination *after* the buyer or renter signs on the dotted line") is one for "constructive eviction." Only "post-acquisition discriminatory conduct that makes a dwelling unavailable to the owner or tenant, somewhat like a constructive eviction" is actionable. *Id*. at 776. That is because "[a]vailability of housing is at the heart of § 3604(a)." *Id*. In order to prove constructive eviction, the plaintiff must show that his residence is "'unfit for occupancy,' often to the point that she is 'compelled to leave.'" *Id*. at 777 (citing BLACK'S LAW DICTIONARY 594 (8th ed. 2004)). "Availability, not simply habitability, is the right that § 3604(a) protects." *Id.* (citing *Southend Neighborhood Improvement Ass'n v. County of St. Clair,* 743 F.2d 1207, 1210 (7th Cir. 1984)); *Cox v. City of Dallas, Tex.,* 430 F.3d 734, 742-43 & n. 21 (5th Cir. 2005) ("[Section 3604(a)] does not protect the intangible interests in the already-owned property raised by the plaintiffs [sic] allegations."); *Jersey Heights Neighborhood Ass'n v. Glendening,* 174 F.3d 180, 192 (4th Cir. 1999) (rejecting plaintiff's claim that selection of site for new highway construction violated § 3604(a) because plaintiff failed to allege that "anyone

5

has for discriminatory reasons been evicted from his home or denied the right to purchase or rent housing"); *Clifton Terrace Assocs., Ltd. v. United Techs. Corp.*, 929 F.2d 714, 719 (D.C. Cir. 1991) ("A lack of elevator service is a matter of habitability, not availability, and does not fall within the terms of these subsections."). As a matter of law, the removal of valet parking services (like the removal of elevator service, see *Clifton Terrace Assocs.*, 929 F.2d at 719) refers, at most, to "habitability" of a building, and thus is not the sort of interest protected by § 3604(a). *Bloch*, 587 F.3d at 777.

Furthermore, the Seventh Circuit has held that "constructive eviction requires surrender of possession by the tenant" within a reasonable time after the allegedly discriminatory conduct occurs. *Bloch*, 587 F.3d at 778. Plaintiff does not allege that he was forced to move out of his apartment due to the change in the parking policy. In fact, it appears that as of August 2, 2010 (when Plaintiff filed his operative complaint), he was still residing at the Lake Terrace building, despite the fact that valet parking was removed on April 15. See ¶ 1 (listing Plaintiff's address at 7337 S. South Shore Drive, Apt. 514, Chicago, Illinois).[4]

### B. Plaintiff Does Not Allege Discrimination

While post-acquisition discrimination is cognizable under § 3604(b) of the FHA, see *Bloch*, 587 F.3d at 779-80, Plaintiff's claim under that section is subject to dismissal because it fails to adequately allege that Defendant discriminated against him. Section 3604(b) of the FHA prohibits discrimination "against any person in the terms, conditions, or privileges of * * * a

---

[4] Plaintiffs' complaint alleges that some families were displaced "due to the problems of parking at this residential facility." ¶ 11. Whether other individuals who are not plaintiffs in this lawsuit were displaced from the building due to the removal of valet parking is immaterial to the Court's analysis. Plaintiff cannot premise his lawsuit solely on harm suffered by third parties. See *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982) ("the sole requirement for standing to sue under [the Fair Housing Act] is the Art. III minima of injury in fact; that the plaintiff allege that as a result of the defendant's actions he has suffered 'a distinct and palpable injury.'"); see also *Gorski v. Troy*, 929 F.2d 1183, 1188 (7th Cir. 1991).

dwelling or in the provision of services * * * in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). A plaintiff can prove that discrimination occurred by showing that the defendant had discriminatory intent when making its decision or by showing that the decision caused a discriminatory effect. *South-Suburban Housing Center v. Greater South Suburban Board of Realtors*, 935 F.2d 868, 882 (7th Cir. 1991); *Metropolitan Housing Development Corp v. Village of Arlington Heights*, 558 F.2d 1283, 1290 (7th Cir. 1977).

To begin with, the complaint fails to allege any discriminatory intent. Plaintiff does not plead any facts tending to show that the board intended to discriminate against a protected group when it changed the parking policy. The complaint only states that Defendant "violated plaintiff's Fair Housing Act rights because defendants have willfully, bad faith, and fault treated the renter-class disparately different from the owner-class under the 'class animus theory' under the rule of law as a matter of law by denying any reasonable accommodations, which would afford equal opportunity to use and enjoy a dwelling." (Cmplt. at ¶ 26). Apart from this and similar conclusory language in Plaintiff's complaint, there is nothing to plausibly suggest that any of the board's decisions were motivated by discriminatory intent of any kind. Plaintiff's brief is similarly imprecise. Plaintiff's brief states only that "pro se plaintiff's amended complaint contains evidence sufficient for a fact finder to conclude that the rather straightforward claim of intentional discriminating [sic] by way of removal of parking * * * in that the removal of such parking accommodations * * * has disparate impact [sic] in the exercise or enjoyment of fair housing rights." (Pl. Resp. at 9). Apart from conclusory allegations of "discriminatory animus," (*id*.) there is nothing to suggest to the Court with the requisite level of plausibility that the Board's actions were motivated by discriminatory intent.

In addition, Plaintiff's complaint fails to adequately allege that the parking policy change had a discriminatory effect. Instead, the parking regulations applied equally to all residents. Although Plaintiff's arguments are somewhat unclear, Plaintiff's papers could be construed as raising an argument that the policy has a disparate impact on renters as compared to owners who rent out their condos because only renters live on the premises. (See Cmplt. at ¶ 26) (discussing disparate treatment suffered by the "renter-class"). However, renters (as compared to owners) are not one of the classes protected by the FHA. See 42 U.S.C. § 3604(a)–(b).

Plaintiff's briefs also could be construed to argue that the policy had a disparate impact on African American residents because those living on the premises are predominantly African American. (See Pl. Resp. at 4). However, Plaintiff has failed to allege any disparate impact that the parking policy has on the African American tenants. Whatever the racial composition of the individuals living on the premises, anyone wishing to park his or her car at Lake Terrace has been deprived of valet services. See, *e.g. Flores v. Village of Bensenville*, 2003 WL 1607795, at *5 (N.D. Ill. Mar. 26, 2003) ("Though there is no dispute that the Village cut off the water supply to [the plaintiffs], there is no evidence to suggest that it continued to supply water to any similarly situated non-[minority] homeowner."). The decision to rescind valet parking services will affect the African American residents in exactly the same manner as it will affect the facility's few Caucasian residents. Depriving residents of valet parking will not lead to segregated housing, nor will it place a burden on African Americans seeking fair housing. *Cf.*, *Metropolitan Housing*, 558 F.2d at 1288 (finding disparate impact when the policy in question "had the effect of perpetuating segregation"). To the extent Plaintiff's claim was intended to be based on age discrimination, it likewise fails because Plaintiff has not alleged any disparate

impact on older residents. The complaint and brief mention Plaintiff's age in passing but fail to assert any harm suffered or discrimination based on age.[5] (Pl. Resp. at 7.)

### C. Section 3604(f) of the FHA

Finally, Plaintiff's brief also briefly mentions Section 3604(f) of the FHA. That section precludes discrimination against any renter "because of a handicap." See 42 U.S.C. § 3604(f). Discrimination includes "refusal to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling." § 3604(f)(3)(B). In his complaint, Plaintiff cites the language regarding refusal to make reasonable accommodations. (See ¶ 25). Plaintiff cannot succeed on his claim under § 3604(f) because he fails to allege that he has a handicap within the meaning of Section 3604(f). Plaintiff's complaint also overlooks the fact that a landlord must only make reasonable accommodations for handicapped tenants. Plaintiff's complaint mentions only his race and his age; therefore, he fails to state a claim under § 3604(f).

\* \* \* \* \*

Finally, the Court comments briefly on Plaintiff's observation that in the Court's July 20, 2010 order [23], the Court commented in the context of its initial sufficiency review under 28 U.S.C. § 1915(e)(2) that Plaintiff's FHA claim was "comprehensible and plausible." As Plaintiff appears to recognize, although the Court ultimately applies the same standard under Rule 12(b)(6) and Section 1915(d), the inquiry is not identical in every respect. Most significantly, the Section 1915 analysis takes place at the earliest stage of the case, at which time the complaint usually has not even been served and the materials before the Court are one-sided. By contrast, a

---

[5] Plaintiff's complaint and brief repeatedly refer to a "class animus" theory. ¶ 25. Courts appear to have used that term as shorthand for discrimination based on socio-economic class status. See, *e.g.*, *Hallmark Developers, Inc. v. Fulton County Ga.*, 466 F.3d 1276, 1284–85 (11th Cir. 2006). Discrimination on that basis is not actionable under the FHA. *Id*. ("Wealth is not a proxy for race").

9

motion to dismiss under Rule 12(b)(6) is filed by the Defendant and provides the Court with the benefit of the adversary's analysis of the case and any claims on which dismissal is sought. As explained above, with the benefit of briefing from both sides in the adversary process, the Court is in better position to assess whether Plaintiff meets the Rule 12 standard and concludes that he does not. However, in light of the analysis provided above – which as to the FHA claim is far more detailed that the Court previously had occasion to present – Plaintiff is given 28 days (until 5/19/2011) to file a motion for leave to replead if he believes that he can cure the deficiencies identified above. If Plaintiff does not seek leave to file an amended complaint within that time frame, the Court will enter a final judgment in favor of Defendant.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss [32] is granted.

Dated: April 21, 2011 _____
Robert M. Dow, Jr.
United States District Judge